### ISAAC W. HAYNE *vs.* WILLIAM HOOD, *Treasurer.*

A peremptory *mandamus* to compel the State Treasurer to pay a creditor of the State will not be granted, unless it clearly appear that a legal appropriation for the purpose has been made, and that there are moneys in the Treasury applicable to the claim.

BEFORE GLOVER, J., AT CHAMBERS, ORANGEBURG, APRIL, 1868.

This was a suggestion by Isaac W. Hayne, Esq., Attorney General of the State, setting forth that there was due to him by the State, for his salary for the last six months of the year 1864, the sum of $550; that said sum was standing on the books of the Treasury to his credit, and that William Hood, State Treasurer, had, upon demand, refused to pay the same; and praying that a rule may issue, directed to the said William Hood, commanding him to shew cause why a writ of *mandamus* should not issue, compelling him to pay the said sum.

A rule, according to the prayer of the suggestion, was granted by his Honor, returnable before him on the 28th April, 1868.

The respondent, William Hood, answered the rule under oath. He admitted that there was due by the State to the relator the sum of $550, for his salary as Attorney General dur-

ing the last two quarters of the year 1864, and that said sum was standing to his credit on the books of the Treasury. He referred to the Appropriation and Supply Acts passed in the years 1863, '5 and '6, a Joint Resolution passed in 1865, (Rep. and Res., p. 200,) and sundry Resolutions passed in 1866, providing for the payment of arrearages of salaries in special cases, and submitted, on several grounds stated in the return, that there was no law which authorized him to pay the claim. He also referred to a letter from the Governor of the State, dated September 17th, 1867, instructing him not to pay arrearages of salaries due and payable in 1864, and concluded his return as follows:

"And your respondent, further answering, saith: That all the funds now in the Treasury, came thereto by General Orders of General Canby, No. 139, dated Charleston, 3d December, 1867, known as the Tax Order. That, by Paragraph I of said Order, it is provided, 'to provide for the *support* of the Provisional Government of South Carolina, for the year *commencing* on the 1st *day of October*, 1867, and *ending* on the 30th *day of September*, 1868,' &c. That, in the Appropriation Order of same No. and date, by Paragraph XIV, it is provided, that 'the Treasurer of the State of South Carolina is hereby authorized to pay the appropriations herein made, *and* the salaries of public officers payable, by law, out of funds applicable thereto, which have fallen due since the 1st day of October, 1867, and which may hereafter fall due;' and, by Paragraph XVI, it is expressly provided, 'that the unexpended balance of appropriation made within the *last two* years, and undrawn, may be paid by the Treasurer, according to the laws of South Carolina,' &c., which amounts to an absolute prohibition upon your respondent against paying from the Treasury any appropriation made more than two years anterior to the date of the said order, 3d December, 1867, and precludes him from paying any balance that might have remained to the credit of any person or object appropriated in 1864.

" *Wherefore*, this respondent did refuse to pay to the relator the sum of $550, demanded at the Treasury, for arrears of his salary for the year 1864. All of which is respectfully submitted."

The judgment of his Honor upon the return to the rule was as follows:

GLOVER, J. In answer to a rule issued in this case, requiring the respondent, William Hood, State Treasurer, to show cause why

a *mandamus* should not issue, commanding and directing him to pay the sum of $550 to the relator, now standing to his credit on the books of the Treasury, as Attorney General of the State, as arrears of his salary for the last six months of the year 1864, he has submitted a return, setting forth the several grounds on which he has declined to pay the said arrears of salary.

The first objection of the respondent is placed on the ground that, " in theory, undrawn appropriations of a preceding year are not chargeable upon the funds raised under Supply Acts of subsequent years," &c.; and that the funds raised by taxes in 1864 consisted of Confederate money, which, by the result of the war, ceased to be available as currency ; and, therefore, that the balance due to the relator was no longer a demand upon the Treasury, unless aided by legislative action. It may be conceded that the Acts to raise supplies and make appropriations, being annual Acts, expire with the year, and that the former ceases to be operative ; but it is not a legitimate consequence that where the appropriations of the year exceed the means provided to pay them, that the public creditor has " no longer a demand upon the Treasury." It would be strange in theory, and stranger in practice, if the Treasurer, with ample means for the purpose, should refuse to pay a claim established before the Legislature—*a fortiori*, a salary—because the demand was not made during the year. Neither in theory nor practice can such a refusal be justified. Means are provided every year to meet the public expenses, and the tax Acts can be enforced only during the year ; and should the income be insufficient to meet all demands against the Treasury, then it is the duty of the Legislature the next year to make further provision to meet the deficiency. The appropriation Act, having directed the payment of the public creditor, is a compulsory order on the Treasurer to pay, when demanded ; and such Acts do not require a re-enactment every year to give validity to their provisions. While funds are in the Treasury, the claims against the State should be paid without applying to the Legislature for a further recognition of them, or additional authority to discharge them. I cannot understand why the State should refuse to pay undrawn appropriations because the taxes collected for that year were insufficient. As well might an individual excuse the non-payment of his debts because his means, realized during the year the debt was payable, were inadequate. I know that the means are adapted to the ways in estimating for the settlement of public dues, but a failure of the former cannot operate as

a repudiation or discharge of the debts of State creditors. The only consequence is, that it devolves on the State to make further provision—not appropriation—for their payment; and whenever the ability to pay is within the power of the Treasurer, he should not wait further orders. The amount of the Attorney General's salary is not fixed by the appropriation Acts, but by the Act of 1828, (6 Stat., 358,) and subsequently increased by Act of 1837, (6 Stat., 577, Sec. V.) By the provisions of these Acts, a contract was made by the State with a public officer, in consideration of services to be rendered during his term of office, to pay him annually the sum stipulated. If, therefore, the State shall fail to provide and appropriate the funds necessary, she would violate her agreement. Nor can it be pretended that payment in a depreciated currency, or in worthless paper, is a fulfillment of the contract. On the contrary, an Act directing or enforcing such payment would impair the obligation binding the State to a fulfillment of her contract. If there be no funds in the Treasury, the validity of the objection to pay would be a sufficient answer to the creditor; but where the liability is established, the claim recognized, the means ample, and the amount actually appropriated, it is no justification that the demand of payment was not made during the year. Payments are generally ordered from funds not otherwise appropriated; and if there be such funds, payment should be promptly made.

2. The respondent also relies upon the Act of 1865, and he infers from the third Section, "saving claims for arrears previous to 1865 from prejudice," that the Legislature contemplated examination into all arrears, like other claims, and a determination on their merits by the Legislature, on petition, before they were discharged. I am unwilling to impute to the Legislature such an intention, nor can I infer it from the language of the Act. The Attorney General's salary is settled by a general Act, fixing the amount of all salaries, and an Act postponing or directing the officer charged with the Treasury to withhold the payment necessarily impairs the obligation of the contract entered into by the State and her officer, and would be unconstitutional. But why examine into the merits of a claim for a stipulated salary? The demand of the relator does not depend on a *quantum meruit*, where the amount and value of services to be rendered must be determined by evidence—nor is it pretended that the relator has failed in the performance of his official duties.

3. To the respondent's third objection, it is only necessary to say that no legislative re-affirmance is necessary to give validity to an appropriation, and my remarks on his second ground will apply to this.

4. I cannot perceive the necessity or propriety of submitting to the Legislature claims for arrearages of salaries due and provided for—or why some were admitted, in part, and some rejected—or what special circumstances induced such a proceeding. Nor is any reason alleged why the relator's claim was not acted upon by the Senate, after it had passed the House of Representatives. If I may be permitted to conjecture, I would suggest that the true reason was, that the Senate did not believe that a concurrence with the action of the House was necessary to enable a public officer to draw his salary—or, possibly, for want of time, it was not finally acted upon. There are cases where the payment of undrawn appropriations has been very properly refused by the Treasurer, unless they be submitted to the consideration and review of the Legislature. Such cases depend on special circumstances, creating doubt as to the identity of the person demanding payment—inducing the belief of fraud—or from the great lapse of time intervening since the appropriation was made. In these cases, it would be proper that an officer, in discharge of his duties, should consult the Legislature, and submit the case to their decision. The Luxemburg claim was of this class. In answer to the rule in this case, no such reason is urged.

The Governor's instructions, referred to by the respondent in his answer, only embodies his conclusions, deduced from a consideration of the Acts of the Legislature, and are entitled to great respect; but an answer to the respondent's objections is an answer to the Governor's conclusions, drawn from a construction of the language used by the Legislature.

5. Another ground assumed by the respondent is, " that the funds now in the Treasury came there by Gen. Canby's order, dated December 3, 1867." This military order employs the language generally used in the Tax and Appropriation Acts annually passed. But I do not understand that the order which directs the payment of appropriations and salaries which have fallen due since October 1, 1867, and " that the unexpended balance of appropriations made within the last two years, and undrawn, may be paid by the Treasurer, according to the laws of South Carolina," amount to a prohibition, as respondent insists, against the payment of appropriations made two years anterior to the date of the order. An inference

may be drawn that the intention was to give a preference to such appropriations as were made two years before the date of the order, and if, after these preferred claims were satisfied, a balance still remained in the Treasury, there is no express prohibition ; nor do I apprehend that it can be legitimately inferred from the language used against the payment of all public dues, merely on the ground of lapse of time. I do not, therefore, see, in any of the grounds taken by the respondent, a sufficient excuse or justification for his refusal to pay the amount standing to the relator's credit on the books of the Treasury ; and

It is ordered, That a writ of *mandamus* do issue, directed to William Hood, Treasurer of South Carolina, directing and commanding him to pay to Isaac W. Hayne, Attorney General of South Carolina, $550, his arrears of salary for the last six months of the year 1864.

The respondent appealed, and now moved this Court to reverse the order of his Honor, on the following grounds :

I. That the fund in the Treasury, provided and appropriated *by law* for the payment of the relator's salary, for the year 1864, being Confederate Treasury notes, which ceased to be of value as currency by the result of the war, the undrawn balance of said salary for the year aforesaid no longer constituted an enforcible demand upon the Treasury, without some subsequent provision or appropriation therefor by the Legislature; and none such having been made, the respondent was not authorized to pay the relator's demand.

II. That the Legislature, by its action taken on claims for arrears of salaries, clearly manifested the intention not to subject the Treasury to such claims, by virtue merely of the original Appropriation Acts providing for the same:

(1.) By providing, in the Tax Act of 1865, and by Joint Resolution at the same session, that the funds with which the Treasury was to be replenished, should be paid out by the Treasurer only in obedience to an Act of that or some future session.

(2.) By providing, in the Appropriation Act of 1865, for payment of arrears of certain salaries accrued in 1865, although these salaries had been already provided for in the Appropriation Act of 1864.

(3.) By saving from prejudice claims for arrears previous to 1st

January, 1865, which, it is submitted, could not have been deemed necessary if the Appropriation Acts of former years were considered operative *proprio vigore*.

(4.) By assuming jurisdiction of claims for arrears of salaries accrued previous to 1865, and providing for the payment of such as were established, in the Appropriation Act of 1866.

And it is respectfully submitted, that the respondent was legally bound to take notice of, and respect, this action of the Legislature, by whose authority alone, according to the Constitution of the State, money may be drawn out of the public Treasury.

III. That, by a proper construction of the Military Orders of December 3, 1867, referred to in the return and in the opinion and order of his Honor, the respondent is restrained from paying to the relator his arrears of salary for 1864, the same having accrued due more than two years previous to the date of said Military Orders.

IV. That the said order of his Honor is, in other respects, contrary to law.

*Maher*, for appellant.

*Hayne*, contra.

Dec. 23, 1868. The opinion of the Court was delivered by

WILLARD, A. J. This is an appeal to the late Court of Appeals from a judgment rendered by Judge Glover, allowing a writ of peremptory *mandamus*, transferred to this Court by Act of the Legislature.

The respondent, I. W. Hayne, filed his suggestion before Judge Glover, alleging that there was to his credit in the Treasury the sum of $550, due as salary as Attorney General for the last six months of the year 1864, and that the appellant, then State Treasurer, had refused to pay the same, and praying a writ of *mandamus*. A rule was issued, to which the appellant made return, among other things, as follows: "That all the funds now in the Treasury came thereto by General Orders of General Canby, No. 139; that, by Paragraph I of said order, it is provided, 'to provide for the support of the Provisional Government of South Carolina for the year commencing on the 1st day of October, 1867, and ending on the 30th day of September, 1868;' that, in the appropriation order of

same No. and date, by Paragraph XIV, it is provided that 'the Treasurer of the State of South Carolina is hereby authorized to pay the appropriations herein made, and the salaries of public officers, payable, by law, out of funds applicable thereto, which have fallen due since the 1st day of October, 1867, and which may hereafter fall due;' and, by Paragraph XVI, it is expressly provided, 'that the unexpended balance of appropriations made within the last two years, and undrawn, may be paid by the Treasurer, according to the laws of South Carolina.' "

The return contains other matters not important to be considered under the view taken of this case.

The return was not traversed, nor does it appear, from the record, that evidence was taken in the case. The case, therefore, stands before us as upon a demurrer to the return, and our only duty is to examine it, in point of law, as to whether it affords sufficient ground for the peremptory *mandamus.*

By the return it appears that all the funds in the Treasury at the date of issuing the rule to show cause, April 22d, 1868, were derived under a tax levy made by order of Major General Canby, then exercising military authority over the State, and were, by the same authority, appropriated to certain defined objects, not embracing the claim of the respondent. Authority was given to apply the unexpended balance of former appropriations, made within the two years previous thereto, "according to the laws of the State of South Carolina." It would appear from the return that no such unexpended balance remained in the Treasury April 22d, 1868, all the funds held at that time having been derived under the military tax levy.

The determination of the question before us must have exclusive relation to the state of facts existing at the time the proceeding was taken. It will not be necessary to notice the change in the situation of the parties, the contents of the Treasury, and the state of the funds in the same, which have occurred, as the propriety of the judgment appealed from can only be determined by the state of facts on which it was based.

The writ of *mandamus* can only issue to compel the performance of some act obligatory by law on the person or officer to whom it goes. He must have the ability to comply, as well as be under a clear duty in respect thereof. It is not necessary to make more than a general reference to the duty of the Treasurer in regard to the payment of the creditors of the Treasury, as these duties are well

understood. He can only pay out of funds in the Treasury, appropriated by law, and to the objects of such appropriations. He is under no general obligation to pay the creditors of the State. It is not sufficient, even, that there should be a legal appropriation; he must have funds applicable thereto, or, in other words, not otherwise appropriated.

The respondent failed to make out such a state of facts. As the *onus probandi* rests with the respondent, the application for the writ of peremptory *mandamus* ought to have been denied.

It is ordered and adjudged, that the order of the Judge, and the writ of peremptory *mandamus* thereby allowed, be, in all things, reversed and vacated.

*Hoge*, A. J., concurred.